**CHESEBROUGH–POND'S, INC., a corporation, Plaintiff-counterdefendant-appellee,**

**v.**

**FABERGE, INCORPORATED, a corporation, Defendant-counterclaimant-appellant.**

**No. 80–5117.**

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Oct. 7, 1981.

Decided Jan. 22, 1982.

Rehearing and Rehearing En Banc Denied March 18, 1982.

---

William K. Rieber, Los Angeles, Cal., argued, for defendant-counterclaimant-appellant; William G. Anderson, Fulwider, Patton, Rieber, Lee & Utecht, Los Angeles, Cal., Richard Whiting, Davis, Hoxie, Faithfull & Hapgood, New York City, on brief.

Richard A. Wallen, Harris, Kern, Wallen & Tinsley, Los Angeles, Cal., for plaintiff-counterdefendant-appellee.

Before HUG, FARRIS and BOOCHEVER, Circuit Judges.

HUG, Circuit Judge:

This is an action for declaratory and injunctive relief, brought by Chesebrough-Pond's, Inc. ("Chesebrough") against Faberge, Inc. ("Faberge"). Chesebrough sought a declaratory judgment that its trademark "Match" is not so similar to Faberge's trademark "Macho" that its use constitutes trademark infringement or unfair competition. Chesebrough also sought an injunction to preclude Faberge from interfering with its use of the trademark. Faberge filed a counterclaim for trademark infringement. On a motion for summary judgment, the district court entered the declaratory judgment and injunction sought by Chesebrough and dismissed Faberge's counterclaim for infringement and unfair competition.

The issues presented in this appeal are: (1) whether a justiciable controversy existed; and (2) whether a genuine issue of fact existed as to the likelihood of confusion of the trademarks.

I

FACTS

In February, 1975, Chesebrough filed an application to register its trademark,

"Match," for a line of men's toiletries and cosmetics. It began developing the product line, investigating marketing, and creating packaging and advertising. Chesebrough's initial investment in development was approximately $650,000.00.

In June, 1975, Faberge acquired the "Macho" trademark, which had been registered by its prior owner in February, 1973. This mark also covered a line of men's toiletries and cosmetics. Faberge has marketed products under the "Macho" mark.

After receiving notice of the pending registration of "Match," Faberge sent Chesebrough a letter on August 25, 1975, stating that it believed the two marks to be "confusingly similar," and that unless Chesebrough withdrew its application, Faberge would file opposition thereto. When Chesebrough refused, Faberge did file an opposition proceeding in the Patent and Trademark Office. It was alleged that the " 'Match' mark so resembles opposer's mark 'Macho' as to be likely . . . to cause confusion, mistake and deception." Chesebrough filed an answer and a petition to cancel the "Macho" mark. The administrative action continued for three years, but remained in the discovery stage.

In October, 1978, Chesebrough filed this action in the district court seeking a declaratory judgment that use of "Match" would not infringe upon Faberge's rights in "Macho." Faberge counterclaimed for infringement and unfair competition and an injunction to prevent Chesebrough from using the term "Match." On Chesebrough's motion for summary judgment, the district court granted Chesebrough its requested declaratory and injunctive relief and entered judgment against Faberge on its counterclaim. It held that a substantial controversy existed between the parties "stemming from [Faberge's] letter of August 25, 1975." It found no likelihood of confusion of the two marks, and concluded that Chesebrough has the right to use the trademark "Match" insofar as the word itself is concerned, free from interference by Faberge.[1]

Faberge appealed on the basis that the case does not present a justiciable controversy. It also argued that even if the case was properly before the district court, the grant of summary judgment was error because factual disputes exist as to consumer practices and perceptions, marketing of products bearing the marks, and the parties' intent.

1. The district court judgment states in part:

5. Chesebrough has the right to use, in connection with cosmetics, toiletries, and related products, the trademark "Match," insofar as the word itself is concerned, free from interference from Faberge, its officers, its agents, servants, employees, attorneys, privies, representatives, successors, and assigns, and any and all persons acting in concert or in participation with them, whether separately or jointly, in and throughout the United States its territories and possessions or in any foreign country where the activities of Faberge or Chesebrough have a substantial effect on interstate commerce or any commerce which Congress may lawfully regulate.

6. Faberge, its officers, agents, servants, attorneys, privies, representatives, successors, and assigns, and any and all other persons acting in concert or participation with them, either separately or jointly, are hereby permanently enjoined from:

a. interfering with, or threatening to interfere with the use of the trademark "Match" by Chesebrough, its related companies, successors, or assigns, in connection with

its or their business in and throughout the United States its territories and possessions or in any foreign country where the activities of Faberge or Chesebrough have a substantial effect on interstate commerce or any commerce which Congress may lawfully regulate;

b. instituting or prosecuting any suit or other proceeding, placing in issue the right of Chesebrough or said related companies, successors, or assigns, to register or use the mark "Match" in connection with cosmetics, toiletries, and related products in and throughout the United States its territories and possessions or in any foreign country where the activities of Faberge or Chesebrough have a substantial effect on interstate commerce or any commerce which Congress may lawfully regulate.

The district court also stated that:

[n]o finding is made by the Court respecting the possibility of confusion arising in the event plaintiff should adopt a trade dress for its "Match" products similar to that of Faberge.

## II

### Existence of an Actual Controversy

#### A. Standard

■ Before this court, Faberge argued that any potential threat of an infringement action is not sufficiently ripe to satisfy the case or controversy requirement, which limits declaratory judgment jurisdiction. It relied upon *Merrick· v. Sharp & Dohme, Inc.*, 185 F.2d 713 (7th Cir. 1950), *cert. denied*, 340 U.S. 954, 71 S.Ct. 573, 95 L.Ed. 687 (1951), which held that the filing of a notice of opposition to registration with the Patent and Trademark Office is not equivalent to a charge of infringement. This reliance on *Merrick* is misplaced, for we view that case as inconsistent with the approach to declaratory judgments adopted by this circuit in *Societe de Conditionnement v. Hunter Engineering Co.*, 655 F.2d 938 (9th Cir. 1981).

The Declaratory Judgment Act, 28 U.S.C. § 2201, allows this court to consider cases in which an "actual controversy" exists. In *Societe* we considered under what circumstances a trademark or patent dispute ripened into an actual controversy. We held that the requirements of the Declaratory Judgment Act were satisfied "if the plaintiff has a real and reasonable apprehension that he will be subject to liability . . . ." *Id.* at 944. In applying this standard, we focused upon the position and perceptions of the plaintiff, declining to identify specific acts or intentions of the defendant that would automatically constitute a threat of litigation. The acts of the defendant were instead to be examined in view of their likely impact on competition and the risks imposed upon the plaintiff, to determine if the threat perceived by the plaintiff were real and reasonable.

*Societe* thus requires a flexible approach that is oriented to the reasonable perceptions of the plaintiff. The *Merrick* test, which offers a set rule under which the defendant's actions determine the existence of an actual controversy, does not fit with this analysis.[2]

■ Faberge warns that a rejection of *Merrick* will cause the district courts to be burdened with unlimited and redundant requests for declaratory judgments based on imagined threats of infringement actions. We see no such danger. Declaratory relief is available at the discretion of the district court. 28 U.S.C. § 2201; *Geni-Chlor International, Inc. v. Multisonics Development Corp.*, 580 F.2d 981, 985 (9th Cir. 1978). Exercise of that discretion will allow rejection of cases that are properly before the Patent and Trademark Office. In addition, as our application of the *Societe* standard to these facts will make clear, a simple opposition proceeding in the Patent and Trademark Office generally will not raise a real and reasonable apprehension of suit.

#### B. Application

The letter sent by Faberge to Chesebrough declaring its intent to file opposition proceedings, stated a prima facie case for trademark infringement, as outlined in 15 U.S.C. § 1114(1). It alleged Faberge's ownership of a registered mark and Chesebrough's use in commerce of a mark so similar to Faberge's that it was likely to cause confusion. The "likelihood of confusion" standard is relevant to both registration and infringement proceedings. 1 McCarthy, *Trademarks and Unfair Competition*, ¶ 20:4 (1973). It was reasonable to infer from Faberge's letter a threat of an in-

---

2. Several recent authorities have questioned the vitality of the *Merrick* decision. *See Continental Connector Corp. v. Continental Specialties Corp.*, 413 F.Supp. 1347 (D.Conn.1976); A. Greenbaum, *The Thirty-Second Year of Administration of the Lanham Trademark Act of 1946*, 69 Trademark Reporter 517, 603–04 (1979). The sources reason that the precedential value of *Merrick* is limited because it relied upon *Postum Cereal Co. v. California Fig Nut Co.*, 272 U.S. 693, 47 S.Ct. 284, 71 L.Ed. 478 (1927). *Postum* held that an opposition proceeding before the Patent and Trademark Office did not present a "case" under Article III. In *Brenner v. Manson*, 383 U.S. 519, 86 S.Ct. 1033, 16 L.Ed.2d 69 (1966), the application of *Postum* was restricted to the statutory scheme in existence prior to 1929. Arguably, *Brenner* also undermines *Merrick*, but the Seventh Circuit adheres to the *Merrick* rule. *See James Burrough Ltd. v. Sign of Beefeater, Inc.*, 572 F.2d 574, 578 n.5 (7th Cir. 1978).

fringement action. Faberge did not act to dispel such an inference. It did not disclaim an intent to pursue an infringement action, but, in fact, responded to Chesebrough's complaint with a counterclaim seeking damages for infringement. The actual filing of a counterclaim for infringement bolsters Chesebrough's claim that a real threat existed. *See Societe*, 655 F.2d at 945.

The inference that Chesebrough drew from Faberge's actions was also reasonable in view of the business relationship of the parties. The market for men's cosmetics is expanding and highly competitive. The practical effect of the attenuated opposition proceeding before the Patent and Trademark Office was to allow expanded marketing of the "Macho" line, while chilling Chesebrough's efforts to market "Match" products. The threat that the action would move from the Patent and Trademark Office to the district court apparently was real enough to dissuade Chesebrough from further use of its mark, although it had made substantial investments in development and preliminary advertising of the line. Furthermore, a decision of the Patent and Trademark Office allowing the registration of Chesebrough's trademark would not preclude a subsequent infringement action or be determinative of the issues involved. *Carter-Wallace, Inc. v. Procter & Gamble Company*, 434 F.2d 794, 802 (9th Cir. 1970). *See also Driving Force, Inc. v. Manpower, Inc.*, 498 F.Supp. 21, 25–26 (E.D.Pa.1980). Failure of this court to resolve the dispute would force Chesebrough to choose between continuing to forego competition in this quickly expanding market, and entering the market, risking substantial future damages and harm to relationships with its customers and retailers.

We therefore conclude that although there was no actual threat by Faberge that it would sue Chesebrough for trademark infringement, Chesebrough had a real and reasonable apprehension that such action would be taken. The district court correctly concluded that this case presented an actual controversy.

## III

### *Existence of Factual Issues*

#### A. *Similarity of the Marks*

■ Faberge contends that the entry of summary judgment was improper because of the existence of a genuine issue of fact. It challenges the district court's conclusion that the two marks are so "dissimilar in connotation and impact" that no factual dispute exists as to their similarity. It is contended that the affidavit of Dr. Einbond, an associate professor of English, was sufficient to raise a factual dispute on this issue.

The district court based its conclusion on the comparative appearance, sound, and meaning of the two marks. *See AMF, Inc. v. Sleekcraft Boats*, 599 F.2d 341, 351 (9th Cir. 1979); *Carter-Wallace*, 434 F.2d at 800. Only a brief evaluation of these characteristics is necessary to affirm the conclusion that the marks are dissimilar. Their appearance differs both in spelling and in the number of syllables. The marks do not sound the same: the "a" in "Match" is pronounced differently from the "a" in "Macho." The final vowel in "Macho" also distinguishes their sound.

Finally, the derivation and meaning of these words is entirely different. "Macho" is a word of Spanish derivation now in common use in the United States. It means strong, manly, virile. *The Random House College Dictionary*, 802 (1980). "Match" is a common English word of several meanings, each of them totally unrelated to "Macho." In addition, the term "Match" is related to Chesebrough's "Prince Matchabelli" product line, and is distinguishable from "Macho" on that basis.

■ We therefore agree that no genuine issue of fact exists as to the marks' dissimilarity. Dr. Einbond's conclusionary affidavit was insufficient to create a question of fact. The affidavit contained no facts other than the obvious sounds and spellings of the two words, about which there is no dispute. He did not mention their distinctly different meanings or origins. It was his opinion that the conclusion to be drawn

from obvious facts varied from the conclusion reached by the court. The similarity or dissimilarity of these two words is a matter easily evaluated by laymen within the realm of their common knowledge and experience. It is highly doubtful that expert testimony on the subject, of the type presented by the affidavit, would be of any real assistance to the trier of fact. Certainly it would be well within the discretion of the trial judge to exclude the expert opinion evidence under Fed.R.Evid. 702.[3]

Rule 56(e) of the Federal Rules of Civil Procedure states in part:

> Supporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.

In this circumstance, when the issue of fact concerned matters of common knowledge and experience, and when it would have been clearly within the discretion of the trial court to exclude the expert opinion at trial under Fed.R.Evid. 702, it was not error to grant a summary judgment even though the expert's conclusion differed from that of the court.[4]

### B. *Remaining Factors Relevant to Confusion of Marks*

Faberge next argues that the district court erred in failing to consider expressly all factors relevant to the question of whether two marks are likely to be confused, as enumerated in *AMF, Inc. v. Sleekcraft Boats*, 599 F.2d at 348–49. These factors include:

1. strength of the mark;
2. proximity of the goods;
3. similarity of the marks;
4. evidence of actual confusion;
5. marketing channels used;
6. type of goods and the degree of care likely to be exercised by the purchaser;
7. defendant's intent in selecting the mark; and
8. likelihood of expansion of the product lines.

The issue in this case is only whether there is a likelihood of confusion arising from similarity of two words, "Match" and "Macho". This action does not pertain to the likelihood of confusion arising from packaging or advertising. Factors 1 and 3, the strength of the mark and the similarity of the marks, have been addressed in the evaluation of the similarity of the names. With regard to factors 2, 5 and 6, there is no dispute. Chesebrough concedes that the product lines are identical and that the products move through the same marketing channels to the same outlets for purchase by the same class of customers. There is also agreement that the goods are relatively inexpensive and are thus chosen by casual purchasers who invest little or no time or care in their selection. There is no question of fact on these issues because there is no dispute; Faberge's contention is conceded. No issue can be raised concerning factor 7, Chesebrough's intent in selecting the mark, for at the time it began development and use of "Match", Faberge had not yet ac-

---

3. Fed.R.Evid. 702 states:
   > If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise.

   The Notes of the Advisory Committee on the rules when proposed state in part:
   > Whether the situation is a proper one for the use of expert testimony is to be determined on the basis of assisting the trier. "There is no more certain test for determining when experts may be used than the common sense inquiry whether the untrained layman would be qualified to determine intelli-

gently and to the best possible degree the particular issue without enlightenment from those having a specialized understanding of the subject involved in the dispute." Ladd, *Expert Testimony*, 5 Vand.L.Rev. 414, 418 (1952). When opinions are excluded, it is because they are unhelpful and therefore superfluous and a waste of time. 7 Wigmore § 1918.

4. No affidavit was presented from a marketing expert with an opinion based upon facts such as market studies or observed public reaction to the product names. Such evidence could have raised a genuine issue of fact, whereas the affidavit presented did not.

quired "Macho." Factors 4 and 8, evidence of actual confusion and likelihood of expansion of product lines, are considerations that would have to await the manner in which Chesebrough products are eventually marketed and the use that is made of the trademark. Such questions are not ripe for disposition at this time.

Because there are no genuine issues of fact, the case is reduced to the legal issue of whether a likelihood of confusion exists from the use of the word "Match" as a trademark. *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc.*, 616 F.2d 440, 443–44 (9th Cir. 1980). In view of the dissimilarity of the words, the lack of intent to infringe, and the total absence of evidence of actual or potential confusion of the undressed marks, the district court correctly concluded that no likelihood of confusion existed.

The remaining claims, which Faberge attempts to raise for the first time before this court, are without merit.

The judgment of the district court is AFFIRMED.

