942 F.2d 792
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
LIP SINC INTERNATIONAL, INC., Plaintiff-Appellant,
v.
DICK CLARK PRODUCTIONS, INC., Defendant-Appellee.
 No. 89-55674.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted Oct. 3, 1990.
Decided Aug. 28, 1991.
 
 1
 Before WALLACE and POOLE, Circuit Judges, and BREWSTER, District Judge.*
 
 
 2
 MEMORANDUM**
 
 
 3
 Plaintiff/appellant Lip Sinc International, Inc. ("Lip Sinc") appeals from summary judgment in favor of defendants/appellees Dick Clark Productions, Inc. ("Clark"), MCA Television, Ltd. ("MCA"), and Chris Bearde Productions, Inc. ("Bearde"). Lip Sinc asserts trademark infringement, unfair competition, unjust enrichment, and bad faith denial of contract claims. We affirm.
 
 BACKGROUND
 
 4
 Clark and Bearde are television production companies. MCA is a television distribution company that distributes shows to independent television stations.
 
 
 5
 From September 1984 through October 1988 Clark and Bearde produced Puttin' On The Hits, a series that featured amateur performers who would mime to popular recordings--"lip synching." The series was promoted in part by "official auditions" held in local areas where the series was broadcast. MCA distributed the show and was chiefly responsible for promoting the series. MCA urged licensee stations to hold local lip sync contests to generate interest in the series.
 
 
 6
 In May 1984, Lois Witsiepe, a partner in Lip Sinc, proposed to representatives of Clark and MCA that Lip Sinc promote the series. Lip Sinc is a company that had promoted generally non-televised lip sync contests. The Clark representative agreed to refer inquiries from local nightclubs interested in holding lip sync contests to Lip Sinc. Lip Sinc would hold "official" series auditions and would receive compensation through the licensing of these promotions. The Clark representative requested that in exchange Lip Sinc provide him with videotapes of any lip sync contests held under the series' auspices. No formal written agreements were signed.
 
 
 7
 Relations between the parties terminated after representatives of Clark became disaffected with the referral arrangement. Upon termination, Clark no longer referred inquiries to Lip Sinc. Instead, nightclubs were referred directly to the local licensee stations.
 
 
 8
 Lip Sinc now asserts that its "lip symbols" and "star" slogans were infringed upon by Clark's logos. According to Lip Sinc, at least one customer discontinued Lip Sinc's services because his own patrons confused the Lip Sinc promotion with the series. Clark's logos included a "top hat" logo and a "transition design" advertisement featuring ordinary people turning into well known performers. These logos used mouth caricatures to depict the idea of someone singing. After Clark entered into the agreement with Lip Sinc, the accused "Star" slogans and the "Singing Cartoon," depicting Dolly Parton and Michael Jackson, emerged as part of Clark's promotional material.
 
 
 9
 Clark asserts, however, that in late 1983 it hired a production designer to create a logo for the series, and that it made no effort to emulate Lip Sinc's logos. MCA registered this logo with the United States Patent and Trademark Office and retained an advertising agency to develop additional logos using the original logo.
 
 STANDARD OF REVIEW
 
 10
 Review of summary judgment on the state trademark and unfair competition claims is the same as that for corresponding federal claims. Questions of state law are reviewed de novo, and conclusions regarding the likelihood of confusion are reviewed under the clearly erroneous standard. Century 21 Real Estate Corp. v. Sandlin, 846 F.2d 1175, 1180 (9th Cir.1988). Levi Strauss and Co. v. Blue Bell, Inc., 778 F.2d 1352, 1361 (9th Cir.1985).[1] Dismissal of unjust enrichment and quantum meruit claims by directed verdict are reviewed de novo. United States ex rel. Morgan & Son Earth Moving, Inc. v. Timberlake Paving & Construction Co., 745 F.2d 595 (9th Cir.1984). Dismissal of bad faith denial of existence of a contract claim by summary judgment is reviewed de novo. Oki America, Inc. v. Microtech International, Inc., 872 F.2d 312, 313 (9th Cir.1989). Application of California law to the issues of statute of limitations and attorneys' fees is also reviewed de novo. Lange v. Penn Mutual Life Insurance Co., 843 F.2d 1175, 1178 (9th Cir.1988).
 
 DISCUSSION
 
 11
 I. Did the district court err in granting summary judgment on trademark infringement and unfair competition claims?
 
 
 12
 Fed.R.Civ.P. 56(c) mandates that the court render summary judgment if "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." The present case is similar to Chesebrough-Ponds, Inc., v. Faberge, Inc., 666 F.2d 393 (9th Cir.1982), in which the district court granted summary judgment in plaintiff's favor, finding that plaintiff's trademark was not so similar to defendant's trademark as to constitute trademark infringement. This court held that, in spite of contentions that there were genuine issues of fact, similarity or dissimilarity of trademarks could be "easily evaluated by laymen within the realm of their common experience." Id. at 398. "In this circumstance, when the issue of fact concerned matters of common knowledge and experience ... it was not error to grant a summary judgment even though the expert's conclusion differed from that of the court." Id.
 
 
 13
 Although controverted issues do exist in the present case, the district court's grant of summary judgment was not clearly erroneous. The test of trademark infringement is likelihood of confusion in the mind of the customer. Likelihood of confusion exists when a customer viewing a trademark is likely to purchase the identified services under the mistaken belief that they are the services of another, or whether the customer would be likely to assume that the service was associated with another service provider. Alpha Industries, Inc. v. Alpha Steel Tube & Shapes, Inc., 616 F.2d 440, 443-444 (9th Cir.1980). This court has developed a five-factor test to determine whether likelihood of confusion exists:
 
 
 14
 A) The strength of the registered service mark.
 
 
 15
 B) The relationship between the services identified by the competing service marks.
 
 
 16
 C) The similarity of the competing service marks.
 
 
 17
 D) The evidence of actual confusion.
 
 
 18
 E) The junior user's intent in adopting its service mark.
 
 
 19
 Rodeo Collection, Ltd. v. West Seventh, 812 F.2d 1215, 1217 (9th Cir.1987). Likelihood of confusion requires that confusion be probable, not simply a possibility. Id.
 
 
 20
 A. Strength of the mark.
 
 
 21
 The strength of the mark is gauged by how great an imaginative leap is required from the trademark to the service, and whether or not the suggestion made by the trademarks is so remote and subtle that it is not likely to be needed by competitive sellers to describe their services. Rodeo Collection, 812 F.2d at 1218. This court finds that a picture of lips is an obvious way of representing lip synching in graphic form. Several other lip synch companies use the lip logo and the logo is a weak, descriptive mark.
 
 
 22
 B. The relationship between the services identified by the competing service marks.
 
 
 23
 Although both parties use similar format, rules, and regulations, there is little similarity between a television series and the licensing of lip sync contests in nightclubs.
 
 
 24
 C. Similarity of competing service marks.
 
 
 25
 Each parties' logo was generic and contained weak similarities to the other. The style of the drawings as well as their content were not sufficiently similar to cause confusion.
 
 
 26
 D. Evidence of actual confusion.
 
 
 27
 Evidence of confusion is highly probative of likelihood of confusion. Rodeo Collection, 812 F.2d at 1219. However, it is not necessary to support such a finding. Id. Lip Sinc presented three witnesses who testified as to actual confusion.
 
 
 28
 Of these witnesses, two were not customers of Lip Sinc, and the third, while arguably a customer, testified only that he thought Lip Sinc was associated with Clark because of what Lip Sinc had told him, not because of trademark confusion. In any event, such confusion was unreasonable due to the weak similarities between the competing marks.
 
 
 29
 E. Junior user's intent in adopting its service mark.
 
 
 30
 While the absence of wilful intent is not determinative, its presence has some bearing. Rodeo Collection, 812 F.2d at 1219. Wilful infringement occurs whenever the defendant adopts an infringing trademark with actual knowledge of the other's mark, even if the infringing mark was independently made. Big O Tire Dealers, Inc. v. Goodyear Tire and Rubber Co., 561 F.2d 1365 (10th Cir.1977), cert. dismissed, 434 U.S. 1052 (1978). There is no admissible evidence in the present case, however, that creates a triable issue of fact as to intent.
 
 
 31
 II. Did the district court err by not allowing Lip Sinc to recover in quantum meruit under the Lip Sinc/Clark agreement?
 
 
 32
 The agreement between the parties was that Clark/MCA would refer Lip Sinc to its local licensee stations and in exchange, Lip Sinc would provide videotapes of the local promotional contests to the series. Lip Sinc agrees that it expected to receive no money from Clark/MCA. The money paid to Lip Sinc was to come from third parties.
 
 
 33
 In order to recover on unjust enrichment, Lip Sinc must show that Clark/MCA received substantial benefit from Lip Sinc's services and that it would be unconscionable to permit Clark/MCA to retain the benefit without paying its reasonable value. Harold A. Newman Co. v. Nero, 31 Cal.App.3d 490, 497 (1973). Lip Sinc, however, received all of the value it expected from the third parties with whom it contracted. To allow Lip Sinc to recover from the appellees would effectively permit double recovery because Lip Sinc already received compensation from the third parties. The benefit to the series was incidental to Lip Sinc's contractual obligations. Damages to Lip Sinc arose from the termination of referrals, not from unpaid compensation.
 
 
 34
 III. Did the district court err in granting summary judgment on Lip Sinc's claim for bad faith denial of a contract?
 
 
 35
 Bad faith denial of the existence of a contract requires Lip Sinc to prove (1) a breach of contract by Clark, and (2) denial of the existence of the contract by Clark, in bad faith, in order to shield itself from liability. Seaman's Direct Buying Service, Inc. v. Standard Oil Co., 36 Cal.3d 752, 769 (1984). The Ninth Circuit has found that, under California law, no special relationship is needed to assert a claim under this tort. Air-Sea Forwarders, Inc. v. Air Asia Co., Ltd., 880 F.2d 176, 187 (9th Cir.1989), cert. den. 110 S.Ct. 868 (1989).
 
 
 36
 Although the district court based its decision to enter summary judgment upon a finding that a special relationship was not shown between the parties, any error was harmless since it was not prejudicial to the substantial rights of the parties. Goodman v. United States, 398 F.2d 879 (9th Cir.1968). Lip Sinc's evidence fails to create a triable issue as to whether or not Clark wrongfully denied the existence of the agreement. See Oki America, Inc. v. Microtech International, Inc., 872 F.2d 312 (9th Cir.1989) (upholding summary judgment of a bad faith denial of a contract claim because the appellant failed to produce admissible evidence that created a triable issue of fact).
 
 
 37
 We need not decide whether the district court erred in refusing to apply the procedural law of the original forum. Affirmation of summary judgment makes this issue moot.
 
 
 38
 AFFIRMED.
 
 
 
 *
 The Honorable Rudi M. Brewster from the Southern District of California sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by 9th Cir.R. 36-3
 
 
 [1]
 Lip Sinc argues that the standard of review for summary judgment should be de novo. Century 21, however, was an appeal taken from a district court's summary judgment and the clearly erroneous standard was held to apply. Under either standard, however, Lip Sinc has failed to prove its case against the appellees