UNITED STATES of America, Plaintiff,

v.

SIX THOUSAND NINETY–FOUR (6,094) "GECKO" SWIMMING TRUNKS, Defendant.

Civ. No. 94–00965 ACK.

United States District Court, D. Hawai'i.

Jan. 17, 1996.

Beverly Sameshima, United States Attorneys Office, Honolulu, HI, for plaintiff.

D. Barclay Bryan, Honolulu, HI, for claimant.

### ORDER DENYING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

KAY, Chief Judge.

#### BACKGROUND

On December 23, 1994, the United States of America, Plaintiff, filed a trademark infringement action against the Defendant for its use of the mark "gecko" on swimming trunks imported by Defendant. In response, on August 29, 1995, the Defendant filed the instant motion for summary judgement on the trademark infringement claim. Since that time Plaintiff amended its complaint to also allege copyright infringement, which this motion does not address. To reflect that fact, on December 19, 1995, Defendant amended its Motion for Summary Judgement to a Motion for Partial Summary Judgement, given that the instant motion solely involves the trademark infringement action. The Plaintiff filed a timely opposition to Defendant's Motion for Summary Judgement.

This matter came for hearing before this court on January 9, 1996.

### FACTS

On November 16, 1993, the Customs Service seized 6,094 swimming trunks imported by the Defendant because the items bore the allegedly counterfeit trademark "Gecko." The trademark "Gecko" is registered with the United States Patent Office by T. Bears of Maui, who has since assigned the right to use this mark to Gecko Trading Company ("GTC"). GTC thereafter granted an exclusive license to Happy Shirts to use the "Gecko" mark on clothing and beach products. A sample of the swimming trunks marketed by Happy Shirts with the "Gecko" label was presented to the court in Exhibit "A" of Plaintiff's Memorandum in Opposition to the Motion for Summary Judgement.

### STANDARD OF REVIEW

Summary judgment shall be granted where there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. Fed.R.Civ.P. 56(c). One of the principal purposes of the summary judgment procedure is to identify and dispose of factually unsupported claims and defenses. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 2552–53, 91 L.Ed.2d 265 (1986).

The United States Supreme Court has declared that summary judgment must be granted against a party who fails to demonstrate facts to establish an element essential to his case where that party will bear the burden of proof of that essential element at trial. *Celotex*, 477 U.S. at 322, 106 S.Ct. at 2552. "If the party moving for summary judgment meets its initial burden of identifying for the court the portions of the materials on file that it believes demonstrate the absence of any genuine issue of material fact [citations omitted], the nonmoving party may not rely on the mere allegations in the pleadings in order to preclude summary judgment." *T.W. Elec. Serv. v. Pacific Elec. Contractors Ass'n*, 809 F.2d 626, 630 (9th Cir.1987).

Rather, Rule 56(e) requires that the nonmoving party set forth, by affidavit or as otherwise provided in Rule 56, specific facts showing that there is a genuine issue for trial. *T.W. Elec. Serv.*, 809 F.2d at 630. At least some "significant probative evidence tending to support the complaint" must be produced. *Id.* Legal memoranda and oral argument are not evidence and do not create issues of fact capable of defeating an otherwise valid motion for summary judgment. *British Airways Bd. v. Boeing Co.*, 585 F.2d 946, 952 (9th Cir.1978).

The standard for a grant of summary judgment reflects the standard governing the grant of a directed verdict. *See Eisenberg v. Ins. Co. of North America*, 815 F.2d 1285, 1289 (9th Cir.1987) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986)). Thus, the question is whether "reasonable minds could differ as to the import of the evidence." *Anderson*, 477 U.S. at 250–51, 106 S.Ct. at 2511.

The Ninth Circuit has established that "[n]o longer can it be argued that any disagreement about a material issue of fact precludes the use of summary judgment." *California Architectural Bldg. Products, Inc. v. Franciscan Ceramics, Inc.*, 818 F.2d 1466, 1468 (9th Cir.1987). Moreover, the United States Supreme Court has stated that "[w]hen the moving party has carried its burden under Rule 56(c), its opponent must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986). Indeed, "if the factual context makes the nonmoving party's claim *implausible*, that party must come forward with more persuasive evidence than would otherwise be necessary to show that there is a genuine issue for trial." *Franciscan Ceramics*, 818 F.2d at 1468 (emphasis in original) (citing *Matsushita*, 475 U.S. at 587, 106 S.Ct. at 1356). Of course, all evidence and inferences to be drawn therefrom must be construed in the light most favorable to the nonmoving party. *T.W. Elec. Serv.*, 809 F.2d at 630–31.

### DISCUSSION

Defendant requests summary judgement on the trademark infringement claim based

on two grounds. First, Defendant appears to suggest that the "Gecko" trademark registered to T. Bears of Maui is not a protected trademark because it is descriptive in nature. Second, even if the trademark constitutes a protected interest, Defendant asserts a defense under the "fair use" doctrine. As discussed below, the Court finds that there are triable issues of fact as to both bases of Defendant's motion and therefore the Court denies the motion for summary judgement.

Generally, to establish trademark infringement, the Plaintiff must show: (1) proof of a protected interest in a trademark and (2) likelihood of confusion as to the identity or association between the Plaintiff and the Defendant due to the common use of the trademark. *Levi Strauss Co. v. Blue Bell*, 778 F.2d 1352, 1354 (9th Cir.1985). Further, where a claim of trademark infringement can otherwise be shown, a Defendant may assert a defense under the "fair use" doctrine if the mark is descriptive, used in a non-trademark manner, and the Defendant uses the mark in good faith.

### I. *Protected Interest*

In the case at bar, the Defendant does not explicitly address the issue of protected interest. However, Defendant's argument that the trademark "Gecko" is merely descriptive in essence challenges the validity of the trademark and thus raises the issue of whether the swimming trunks imported by Defendant in this case infringed on a protected trademark interest. In turn the Court will address this issue below.

### A. *"Protected Interest" Generally*

There are four categories of marks: generic, descriptive, suggestive, and arbitrary or fanciful. *Surgicenters of America, Inc. v. Medical Dental Surgeries, Co.*, 601 F.2d 1011, 1014 (9th Cir.1979). In general the first two types of marks, generic and descriptive, are not recognized as protected trademark interests. A generic mark is a mark that "refers, or has come to be understood as referring, to ... [a] particular product or service," and for this reason can never receive trademark protection. *Id.* In comparison, descriptive marks "identif[y] a characteristic or quality of an article or service," yet also generally receive no protection. Specifically, "[a] name which is merely descriptive of the ingredients, qualities, or characteristics of an article of trade cannot be appropriated as a trademark." *Id.* at 1018.

However there are two exceptions to the general rule that descriptive marks may not receive trademark protection. First is the "secondary meaning" exception. Second, and relatedly, is the exception that trademarks defined as "incontestable" under the Lanham Act are conclusively presumed to be non-descriptive. 15 U.S.C. § 1115(b)(4). The Court does not need to reach the issue of whether either of the two exceptions apply, since triable issues of fact exist as to the preliminary issue of whether or not the trademark "Gecko" is descriptive.

### B. *There Are Triable Issues of Fact As To Whether or Not the Term "Gecko" Is Descriptive and Hence Not Protected*

In the instant case Defendant suggests that the "Gecko" trademark is merely descriptive because it merely describes a type of lizard found in Hawaii. True, the word "gecko" is common to the English language and is descriptive of certain Hawaiian lizards. However in order for a trademark to be deemed descriptive, it must be descriptive *of the product or services sold. Surgicenters,* 601 F.2d at 1016.

In particular, only "'a word or phrase which is primarily *descriptive of the article to which it is attached* may not be appropriated by any one as his exclusive trademark.'" *Id.* at 1019, quoting *Abercrombie and Fitch Co. v. Hunting World, Inc.*, 537 F.2d 4, 9 (2nd Cir.1976). In contrast, a word that bears no relationship to the product may be adopted as a trademark. The Supreme Court has addressed this distinction, noting that the trademark "American Girl" would not be descriptive at all as it relates to shoes, whereas a hypothetical trademark "American *Shoes*" would be descriptive of shoe products. *Hamilton–Brown Shoe Co. v. Wolf Bros. & Co.*, 240 U.S. 251, 257, 36 S.Ct. 269, 271, 60

L.Ed. 629 (1916), cited in *Surgicenters,* 601 F.2d at 1019 n. 25.

■ In the present case the Plaintiff has shown evidence that the "Gecko" mark is used by the trademark holder on clothing such as swimming trunks. *See* Plaintiff's Declaration dated December 21, 1995. This evidence suggests that the "Gecko" mark is not descriptive as it relates to the way it is used by the trademark holder on clothing. While the word "gecko" may be descriptive of products that resemble Hawaiian lizards, the word is not inherently descriptive of the swimming trunks sold by the licensees of the trademark.

For these reasons the Plaintiff has shown that triable issues of fact exist as to whether or not the trademark "Gecko" is suggestive or arbitrary/fanciful, rather than descriptive, and therefore represents a "protected interest" subject to trademark infringement.

## II. *Likelihood Of Confusion*

Likelihood of confusion requires that confusion be probable, not simply a possibility. *Rodeo Collection Ltd., v. West Seventh,* 812 F.2d 1215, 1217 (9th Cir.1987). It is the totality of facts in a given case that is dispositive. *Id.* In addition, while the issue of likelihood of confusion is a mixed question of law and fact, the inquiry is predominantly a question of fact. *Eclipse Associates Ltd. v. Data General Corp.,* 894 F.2d 1114, 1116 (9th Cir.1990), citing *Levi–Strauss & Co. v. Blue Bell, Inc.,* 778 F.2d 1352, 1355 (9th Cir.1985).

■ While the Ninth Circuit has never articulated specific factors that a district court must apply, it has identified a series of non-exclusive factors that are helpful in making the determination whether the public is likely to be deceived or confused by the similarity of the marks as to source, relationship, or sponsorship. *Eclipse Associates Ltd. v. Data General Corp.,* 894 F.2d at 1117–18. These factors include: strength of mark, similarity of mark, class of goods and marketing channels, evidence of actual confusion, and intent of second user. *Id.* at 1117 and n. 2. The court will evaluate each factor in turn.

### a. Strength Of Mark

In *Miss World (UK), Ltd. v. Mrs. America Pageants, Inc.,* the Ninth Circuit explained the proper considerations for determining whether a mark is strong:

The strength of a given mark rests on its distinctiveness. The scope of protection afforded a strong mark is greater than that afforded a weak one. In determining the distinctiveness of a mark one looks to the degree to which the public associates the mark with a particular source. As we stated in *Rodeo Collection,* a "mark's strength can be measured in terms of its location along a continuum stretching from arbitrary, inherently strong marks, to suggestive marks, to descriptive marks, to generic, inherently weak marks." 812 F.2d at 1218....

856 F.2d 1445, 1448 (9th Cir.1988). The Ninth Circuit continued:

Placement on the spectrum of distinctiveness does not end the enquiry as to the strength of a mark: it is only the first step. The second step is to determine the strength of this mark in the marketplace. That is, its degree of recognition in the minds of the relevant customer class....

We apply the "imagination test" and the "need test" to determine the strength of a mark. The imagination test asks how much imagination a consumer must use to associate a given mark with the goods or services it identifies. The product signified by an arbitrary mark requires great imagination. The more imagination required, the stronger the mark is. The "need test" approaches the problem from the opposite end. It asks to what extent a mark is actually needed by competitors to identify their goods or services. If the message conveyed by the mark about the goods or services is so direct and clear that competing sellers would be likely to need to use the term in describing or advertising their goods or services, then this indicates the mark is descriptive.... As the amount of imagination needed increases, the need of the mark to describe the product decreases.

*Id.* at 1449 (quotations and citations omitted).

A strong mark is one which is used only in a fictitious, arbitrary, and fanciful manner.

The best example is a name made up by the user. *Id.; see AMF Incorporated v. Sleekcraft Boats,* 599 F.2d 341, 349 (9th Cir.1979) (noting that in a prior Ninth Circuit decision, Dutch Boy was not used geographically or descriptively, but in a fictitious, arbitrary and fanciful manner). A weak mark is one that is a meaningful word in common usage, or is merely descriptive. *Alpha Industries, Inc. v. Alpha Steel Tube & Shapes,* 616 F.2d 440, 445 (9th Cir.1980).

In the case at bar, the court finds there is a triable issue of fact as to the strength of the trademark "Gecko." Defendant argues that the word "gecko" is in common usage and has meaning in the English language. *Id.* However, the use of the word "gecko" is not common in connection with the sale of swimming trunks. Rather, the connection in the minds of consumers between the word "gecko"—the word for Hawaiian lizards—with swimming apparel requires some imagination. Thus under the "imagination test" there is a triable issue of fact as to whether or not the trademark for the common word "gecko" is a strong or weak mark.

Defendant further argues that the trademark "Gecko" is merely descriptive of a type of Hawaiian lizard, and presumably therefore the mark is weak. However as discussed *supra,* the Plaintiff has shown evidence that the word "gecko," at least as used in conjunction with swimming trunks, is not descriptive of the products marketed by the trademark holder. Therefore in this regard there is at least a triable issue of fact as to whether or not the trademark "gecko" is a strong mark.

### b. Similarity Of Mark

The similarity of the marks is assessed in terms of their sight, sound, and meaning—the "similarity trilogy." *Miss World,* 856 F.2d at 1450–51. This analysis involves: (1) a subjective "eyeball" test to determine whether as displayed the marks look similar; (2) an examination of the two marks' phonetic similarity; and (3) the meaning of the words used in the marks. *Id.* at 1451. A composite mark must be examined in its entirety, and not piece by piece. *Id.* at 1450.

The marks' similarities should be weighed more heavily than their differences. *Rodeo,* 812 F.2d at 1219. Even where the marks are identical when viewed in isolation, "their similarity must be considered in light of the way the marks are encountered in the marketplace and the circumstances surrounding the purchase of the [goods]." *Lindy Pen Co., Inc. v. Bic Pen Corp.,* 725 F.2d 1240, 1245; *Alpha,* 616 F.2d at 444. If the marks appear in conjunction with a clearly displayed name or logo of the manufacturer, there is less likelihood of confusion. *Carrington v. Sears, Roebuck & Co.,* 5 Haw.App. 194, 200, 683 P.2d 1220 (1984); *but see Americana Trading, Inc. v. Russ Berrie & Co.,* 966 F.2d 1284, 1288 (9th Cir.1992) (prominent use of defendant's mark might serve to create likelihood of confusion on part of consumers, in thinking that defendant was producer of plaintiff's product).

In the present case, the Plaintiff has introduced evidence to convince the court that a triable issue of fact exists as to whether the two marks are similar. First, pursuant to the "eyeball test," the Plaintiff has shown evidence that the two marks look alike. In addition to the fact that the words "Gecko" and "Gecko Hawaii" used by the Defendant are identical to the trademarks at issue, the graphic depiction of the words are also similar. For example both words appear next to a picture of a lizard with sunglasses, even though the lizard is facing a different direction on the trademarked product and Defendant's swimtrunks. Moreover, the word "Gecko" on each of the respective swimtrunks is depicted within a rectangular box of roughly similar proportions, and on both the word "Gecko" appears on the front left, bottom corner of the swimtrunks. Albeit, the mark "Gecko" on Defendant's swimtrunks is printed smaller in size and reads diagonally over the lizard picture, as compared to the trademark holder's large, bold "Gecko" mark that is printed below its lizard illustration. However in viewing this evidence in the light most favorable to the nonmoving party, the court finds that the trier of fact could conclude that the marks are visually similar.

Second, under the "sound" test, the Defendant's use of the term "Gecko" is identical to the trademark "Gecko" and therefore sounds the same.

Third, there is evidence that the Defendant used the "Gecko" mark to convey the same meaning as intended by the trademark holder. Specifically, the Defendant's placement of the allegedly infringing mark on the lower left hand corner of the shorts suggests that the Defendant may have used the mark "Gecko" to carry the same trademark meaning as the "Gecko" logo. That is, Defendant's placement of the mark on the corner of the swimming trunks may evince Defendant's intent for its use of the word "Gecko" followed by the word "Hawaii" to convey that its swimming trunks were produced by the trademark holder.

Defendant argues that its use of the words "Gecko" and "Hawaii" did not convey this meaning because it had attached a separate tag to the swimming trunks, bearing its distinct logo "Pacific Beach Hawaii." Defendant further argues that it used the word "Gecko" only in a descriptive sense to describe the lizard pictured below it on the shorts. However, viewed in context of the Defendant's placing the mark on swimming trunks, the court finds that the trier of fact could find that the two marks convey a similar meaning.

Even though the marks do not look identical, the court concludes that the trier of fact could find that on balance the two marks are sufficiently similar in appearance, sound, and meaning, especially when taking into account how they are encountered in the marketplace. For these reasons the court finds there is a triable issue of fact as to the similarity between the marks.

### c. Class Of Goods And Marketing Channels

The greater the similarity between the goods offered by the Plaintiff and the Defendant, the more likelihood there is of consumer confusion. *Miss World*, 856 F.2d at 1450.

In the case at bar, the trademark holder and the Defendant sell exactly the same goods: swimming trunks. The parties have not shown specific evidence as to the marketing channels used to sell the respective brands of swimming trunks. However, because the class of goods are identical—swimming trunks—the court concludes there is sufficient evidence as to this factor to suggest that consumers would be likely to confuse the two products.

### d. Evidence Of Actual Confusion

Evidence of actual confusion is strong evidence of likelihood of confusion, but it is not determinative. *Miss World*, 856 F.2d at 1451.

In the case at bar, Plaintiff has offered no evidence of actual confusion in the form of affidavits. However, failure to prove instances of actual confusion is not dispositive. *Eclipse*, 894 F.2d at 1118. When no evidence of actual confusion is presented, that is merely one factor to be considered. *Id.*

### e. Intent Of Second User

Evidence of wrongful intent, when present, has some bearing on the likelihood of confusion. *Miss World*, 856 F.2d at 1451. The absence of such evidence, however, is not determinative. *Rodeo*, 812 F.2d at 1219. If the latecomer adopts the name or mark deliberately to capitalize on the prior user's tradename and thus benefits from consumer confusion, that is an important factor in favor of finding a likelihood of confusion. *Alpha*, 616 F.2d at 446 (district court found that appellee's adoption of its tradename and trademark was done in good faith without the intention of trading upon any goodwill of appellant).

Defendant claims that it intended to use the word "Gecko" only in a non-trademark sense to describe the lizard illustration on its product, as evidenced by the fact that Defendant placed a large tag on its products to identify the brand as "Pacific Beach Hawaii." In response the Plaintiff has shown evidence that the Defendant used the word "Gecko" in conjunction with a picture of a lizard that bears resemblance to a copyrighted lizard design that is also used by the trademark holder in conjunction with the trademarked word "Gecko." Viewing this evidence in a light most favorable to the Plaintiff, the non-moving party, the court concludes that a triable issue of fact exists as to whether Defendant adopted its mark deliberately to capitalize on the tradename.

Accordingly, the court finds that this factor may support the Plaintiff's contention that

the Defendant's use of the mark is likely to confuse consumers.

### f. Balancing Of Factors

Upon review of the foregoing factors, the court finds that the Plaintiff has shown that there are triable issues of fact as to whether or not Defendant's use of the "Gecko" mark will create a probable likelihood of confusion. Plaintiff has shown evidence relating to four of the five factors that indicate a strong likelihood of confusion exists, but especially as to the factors of similarity of mark, class of goods, and intent of second user.

### III. *Fair Use Defense*

Under the "fair use" doctrine, a defendant in a trademark infringement action will not be liable for infringement if the mark is descriptive and the defendant has used the mark in a non-trademark sense and in good faith to describe to users the goods or services. Lanham Act, 15 U.S.C. § 1115(b)(4).

Defendant does not contend that its use of the word "Gecko" describes its swimming trunks per se, but rather that it uses the word "Gecko" to describe an aspect of its product, the lizard illustration on the swimming trunks. However this aspect of Defendant's motion for summary judgement fails for three reasons: (1) the mark must be descriptive; (2) the alleged infringer must use the mark in a descriptive, non-trademark sense; and (3) the alleged infringer must have acted in good faith. *Id.*

First, the "fair use" defense applies only to descriptive marks. As discussed above, the Plaintiff has shown sufficient evidence to suggest that a trier of fact might find that the word "Gecko" is not descriptive as applied to swimming trunks.

Second, even if the word "Gecko" is recognized as a descriptive word because it is commonly used in the English language to refer to Hawaiian lizards, the Defendant must use the mark in a descriptive, non-trademark sense. As to this element, the Defendant's placement of the "Gecko" mark in the lower left hand corner of the swimming trunks suggests that it may have used the mark in a trademark sense—particularly given the fact that Defendant printed the mark in the same location on the swim trunks and in arguably similar design to the trademark holder's "Gecko" logo.

Third, and relatedly, the Plaintiff has produced evidence which suggests that Defendant did not act in good faith. This relates to the second element above, since if the context of Defendant's placement of the mark on its swimming trunks suggests that the Defendant used the mark in a trademark sense, then this may likewise suggest that the Defendant did not act in good faith. Further, the Plaintiff has evidenced Defendant's possible bad faith by the fact that Defendant used the mark in conjunction with an illustration that may also violate the trademark holder's copyrighted depiction of a lizard. This is the basis for Plaintiff's copyright infringement claim against Defendant in the Amended Complaint.

For these reasons the court finds that triable issues of fact exist as to whether the Defendant has a defense under the "fair use" doctrine.

### *CONCLUSION*

For the foregoing reasons, the court DENIES the Defendant's motion for summary judgement, since the court concludes that triable issues of fact exist as to whether the Defendant has infringed upon the "Gecko" trademark at issue in this case. Specifically, the Plaintiff has produced evidence that the trier of fact could find (1) that the mark "Gecko" is not descriptive but rather is suggestive or arbitrary/fanciful and therefore is entitled to trademark protection as a protected interest, (2) that Defendant's use of the mark creates a likelihood of confusion in the minds of consumers, and (3) that Defendant is not entitled to the "fair use" defense.

Nothing in this order shall preclude a finding of summary judgement in favor of the Plaintiff, in the event that the Plaintiff were to file a motion for summary judgement. Nevertheless the court notes that because this case will involve a bench trial, this case is best suited for disposition at trial rather

than through a motion for summary judge-ment.

IT IS SO ORDERED.